# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **MARY FOX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **V.** | ) | **Case No. 4:15CV255NCC** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Mary Fox (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq., and for Supplemental Security Income (SSI), under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 16). Defendant has filed a brief in support of the Answer. (Doc. 19). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 9).

# I.
## PROCEDURAL HISTORY

On December 30, 2010, Plaintiff filed her applications for DIB and SSI.  (Tr. 136-48).  Plaintiff alleged a disability onset date of January 1, 2010.  Plaintiff's applications were denied, and she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 83-87, 90-92).  After a hearing, by decision, dated September 27, 2012, the ALJ found Plaintiff not disabled.  (Tr. 8-23).  On January 9, 2015, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-4).  As such, the ALJ's decision stands as the final decision of the Commissioner.

# II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'"  Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of

impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228

F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence").  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him or her to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he or she considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See

id.  Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence.  See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments.  20 C.F.R. § 404.1545(b)-(e).  The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy.  See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)).  The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.  The Commissioner has to prove this by substantial evidence.  Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities.  See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used.  An ALJ posing a hypothetical to a VE is not required to

include all of a plaintiff's limitations, but only those which the ALJ finds credible.
See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

## III.
## DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

At the hearing, Plaintiff's attorney stated that it was Plaintiff's contention that her mental functioning, "mainly the anxiety that she experience[d]," panic attacks, difficulty leaving her house, and impulsive behavior, precluded Plaintiff from engaging in substantial gainful work activity. (Tr. 37). Counsel acknowledged that Plaintiff "had a history of alcohol and there [was] some

mention of cocaine," and that she "also [had] been a compulsive gambler." (Tr. 10).

The ALJ found that Plaintiff met the insured status requirements through March 31, 2015; that Plaintiff had not engaged in substantial gainful activity since January 1, 2010, her alleged onset date; that Plaintiff had the severe impairments of osteoarthritis, obesity, depression, anxiety, and substance abuse disorder; and that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment. The ALJ found that Plaintiff had the following RFC: Plaintiff could lift and carry 20 pounds, occasionally, and 10 pounds, frequently; she could stand or walk six hours out of an 8-hour work day; she could sit 6 hours out of an 8-hour work day; she was limited to occasional interaction with supervisors, co-workers, or the public; she was limited to work that required "no more than simple, one-or-two step instructions"; and she could not "sustain work on a continuing basis (i.e., eight hours per day and five days a week.") Based on this RFC, and Plaintiff's age, education, and work experience, the ALJ found that no jobs existed, in significant numbers, which Plaintiff could perform. (Tr. 11-16).

The ALJ continued her analysis, considering Plaintiff's substance abuse, and concluded that if Plaintiff stopped the substance use, her remaining impairments would cause more than a minimal impact on her ability to perform basic work activities; that Plaintiff's remaining impairments, absent substance abuse disorder,

were osteoarthritis and obesity; and that this combination of impairments was severe. The ALJ also found that Plaintiff's medically determinable mental impairment, absent substance abuse, caused no more than mild limitations; that Plaintiff's mental impairment had less than a minimal effect upon her ability to perform work-related functions; and that, consequently, Plaintiff's mental impairment was non-severe. The ALJ further concluded that, if Plaintiff stopped the substance use, she would not have an impairment or combination of impairments that met or medically equaled a listed impairment, and that she would have the following RFC: Plaintiff could lift and carry 20 pounds, occasionally, and 10 pounds frequently; she could stand or walk 6 hours out of an 8-hour work day; she could sit 6 hours out of an 8-hour work day; she could perform routine, repetitive tasks in a low stress environment; and she was limited to work requiring no more than occasional judgment. The ALJ found that if Plaintiff stopped the substance use, considering her age, education, work experience, and RFC, there would be a significant number of jobs in the national economy which Plaintiff could perform; that, because Plaintiff's would not be disabled if she stopped the substance use, her substance use disorders were together a contributing factor which was material to the determination of disability; and that, therefore, Plaintiff was not disabled within the meaning of the Act from her alleged onset date through the date of the ALJ's decision. (Tr. 16-23).

Plaintiff contends that the ALJ's decision is not based on substantial evidence because: the ALJ gave improper weight to the opinion of Charles Mannis, M.D., who conducted a post-hearing consultative physical evaluation of Plaintiff; that ALJ erred upon finding that Plaintiff had a medically determinable impairment of substance abuse; that the ALJ erred when finding that Plaintiff's medical conditions would sufficiently improve were she to abstain from substance abuse; the ALJ's decision is internally inconsistent; and that the ALJ posed a flawed hypothetical to the VE. For the reasons discussed below, to the extent the ALJ's decision addresses whether Plaintiff's conditions would sufficiently improve to the point that she would not be found disabled were she to abstain from substance abuse, the court finds that the ALJ's decision is not based on substantial evidence and is not entirely consistent with the Regulations and case law. As such, the court finds it unnecessary to address Plaintiff's other arguments why the ALJ's decision is not based on substantial evidence.

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision

as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

In 1996, Congress eliminated substance abuse as a basis for obtaining social security benefits. See Kluesner v. Astrue, 607 F.3d 533, 537 (8th Cir. 2010). The Regulations applicable to substance abuse provide that: "An individual shall not be considered disabled for purposes of [Social Security] if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Id. The Regulations set forth a two-step process in cases involving evidence of substance abuse. First, the ALJ must determine if the claimant's symptoms, regardless of cause, constitute a disability. Kluesner, 607 F.3d at 537; 20 C.F.R. § 416.935(a). If the ALJ finds a disability and evidence of substance abuse, the next step is to determine whether the disability would exist in the absence of the substance abuse. Kluesner, 607 F.3d at 537. As such, the ALJ's finding of disability "is, in effect, a condition precedent" to applying the special rule on alcoholism and drug addiction." Frank S. Bloch, Bloch on Social Security § 3.39 (2003) (cited approvingly in Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003)). See also Fastner v. Barnhart, 324 F.3d 981, 986 (8th Cir. 2003) ("Generally, a determination under . . . § 416.935(b) is only necessary if the ALJ has found that

the sum of that individual's impairments would otherwise amount to a finding of disability.").

"An individual is not considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). "[T]he relevant inquiry is 'whether [the Commissioner] would still find [a claimant] disabled if [he or she] stopped using drugs or alcohol.'" Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (quoting 20 C.F.R. § 404.1535 and 20 C.F.R. § 416.935). Rehder v. Barnhart, 205 F.3d 1056, 1059 (8th Cir. 2000); Jackson v. Apfel, 162 F.3d 533, 537 (8th Cir. 1998) (because claimant's depression was linked to chemical dependence and because it was not a severe impairment when combined with alcohol abuse, the plaintiff was not disabled).

Plaintiff contends that, upon determining Plaintiff's RFC, the ALJ failed to consider the Eighth Circuit's opinion, in Brueggemann, 348 F.3d at 693-95, when determining whether Plaintiff was disabled. The court, in Brueggemann, considered the above-cited statutory provisions relevant to a claimant with a history of alcoholism, and held that:

> Since certain 1996 amendments to the Social Security Act, if alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied. 42 U.S.C. § 423(d)(2)(C); 20 C.F.R § 404.1535. The burden of proving that alcoholism was not a contributing factor material to the disability determination falls on [the claimant]. Estes v. Barnhart, 275

F.3d 722, 725 (8th Cir. 2002), citing Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. Hildebrand, 302 F.3d at 838.

. . .

The plain text of the relevant regulation requires the ALJ first to determine whether [a claimant] is disabled. 20 C.F.R. § 404.1535(a) ("*If we find that you are disabled* and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). The ALJ must reach this determination initially, as the ALJ did in Fastner v. Barnhart, 324 F.3d 981, 986 (8th Cir. 2003), using the standard five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders. Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001). The ALJ must base this disability determination on substantial evidence of [the claimant's] medical limitations without deductions for the assumed effects of substance use disorders. The inquiry here concerns strictly symptoms, not causes, and the rules for how to weigh evidence of symptoms remain well established. Substance use disorders are simply not among the evidentiary factors our precedents and the regulations identify as probative when an ALJ evaluates a physician's expert opinion in the initial determination of the claimant's disability. See 20 C.F.R. § 404.1527.

If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent. Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. §404.1535(b)(2). We have previously noted that *when the claimant is actively abusing alcohol or drugs, this determination will necessarily be hypothetical and therefore more difficult than the same task when the claimant has stopped.* Pettit, 218 F.3d at 903. *Even though the task is difficult, the ALJ must develop a full and fair record and support his conclusion with substantial evidence on this point just as he would on any other.*

Only after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may he then reach a conclusion on whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability. If this process proves indeterminate, an award of benefits must follow.

(emphasis added).

It is apparent from the text of the ALJ's decision in the matter under consideration that the ALJ followed the Regulations and procedure, as set forth in Brueggemann, to the extent the ALJ first considered whether Plaintiff was disabled in view of all her limitations, including her substance abuse, prior to considering whether her limitations would remain if her substance abuse ceased. Upon doing so the ALJ considered only Plaintiff's symptoms, not the causes of her symptoms, and concluded that Plaintiff's substance disorders were a contributing factor material to the disability determination and that Plaintiff was unable to engage in substantial gainful activity. As required by the Regulations, the ALJ then considered whether Plaintiff's limitations would remain when the effects of her substance use disorders were absent.

As relevant to the determination of whether Plaintiff's limitations would remain when the effects of her substance use disorders were absent, a Progress Note from BetNoMore Gambling Programs, dated February 15, 2012, prepared by D. L. Smith, L.C.S.W., B.A.C.C., reflects that Plaintiff said she "[u]sed alcohol,

coke and gambled in response" to issues with attending a meeting in a clinic; and that she "was doing very well after court then set back by the inability to seek medical help." (Tr. 439-40). Mr. Smith reported, in a Progress Notes of February 29, 2012, that Plaintiff said that she "used cocaine over the weekend with friends" and "then had a few beers with" a friend; that she drank the prior Friday and went gambling afterwards; and that, on the prior Saturday, she used more cocaine, lost more of her own money, and again on Sunday after [an] argument with her brother." (Tr. 440). Additionally, Mr. Smith reported, in a Progress Note, dated March 14, 2012, that Plaintiff said she did "some not a lot of cocaine over the weekend"; that Plaintiff was concerned that if she sought help at Grace Hill she would be treated "like an addict"; and that the counselor suggested to Plaintiff that if she stopped using cocaine she may not be treated as an addict. Plaintiff also told Mr. Smith, on this date, that, on two occasions, after she "chickened out" of going to Goodwill, she drank afterwards; and that after drinking she went to the casino and gambled. (Tr. 440-41).

On March 21, 2012, Mr. Smith reported, in a Progress Note, that Plaintiff had "polysubstance dependence (alcohol cocaine) r/o cocaine dependence," and that that Plaintiff's "last use of alcohol and cocaine was concomitant with [her] last gambling experience, 3/10/12, after a period of months of abstaining." (Tr. 441). On March 22, 2012, Maria del Rosario Bobadilla, a therapist with Grace Hill

Health Centers, Inc., diagnosed Plaintiff with "Drug withdrawal," and noted that Plaintiff had "no history of alcohol use" and that Plaintiff denied alcohol use. Ms. Bobadilla diagnosed Plaintiff with "Anxiety, Generalized," "Adjustment Disorder w/Depressed Mood," and "Drug withdrawal." The record does not reflect Ms. Bobadilla's training or what type of degree, if any, she has. (Tr. 426-27).

On March 28, 2012, Mr. Smith reported, in a Progress Note, that Plaintiff reported "no gambling, no drinking, no cocaine, but report[ed] she did drink a lot of vodka for tooth pain on Saturday (no drinking?)." Notes of this date also reflect that Plaintiff stated that "she [was] doing well except for getting very very drunk on Saturday. She [was] proud of herself for not using cocaine or gambling." (Tr. 441-42).

On April 18, 2012, Mr. Smith reported that Plaintiff was gambling on her phone, and that Plaintiff was "cognitively and emotionally compromised to such an extent (the drinking and cocaine, as well as environmental stressors do not help, nor do the family arguments), that she [could not] understand that she [was] in action with gambling even though she [was] not using any real money for the betting." Mr. Smith further reported, on this date, that, despite Plaintiff's desire to stop drinking or using drugs, she continued to use them. Mr. Smith concluded that "[e]ither [Plaintiff] was not acting out in this way at the time of admit, and subsequently developed the addiction to chemicals, or she was minimizing and not

reporting from the very beginning." (Tr. 442). On April 25, 2012, Plaintiff told Mr. Smith that she was "us[ing] cocaine to pick her[self] up," and that she drank "to stop the pain, physical and emotional." (Tr. 442-43).

Mr. Smith reported, pursuant to a May 3, 2012 Assessment, that Plaintiff said she began use of alcohol at age thirteen; that she said she last used alcohol "oh I don't know, a month or so [ago], with no use of other drugs except cocaine which help[ed] her stay up at the casino"; that Plaintiff said that she believed her depression and gambling were "to the point where she [could] not finish college classes nor consistently find work"; that Plaintiff reported "no substance problems, but [that] [she] was arrested for criminal trespass because she self-excluded from casinos in MO and IL and continued to gamble"; that she "was in possession of a small amount of cocaine at the time of the arrest"; that she "drank too much with friends, decides to use cocaine with her female friend of many years, and then goes gambling"; that she "used cocaine to extend the time she [could] gamble"; and that she was "drinking less" at the time of the assessment. Mr. Smith's clinical impression was that Plaintiff was a "compulsive gambler, and may have substance issues," and that she had "no recovery program, but ha[d] taken responsibility for her actions, [was] very remorseful, and report[ed] a sincere desire to succeed at rehabilitation." (Tr. 431-34).

Notably, as stated above, Plaintiff's counsel acknowledged her substance abuse, including alcoholism, cocaine use, and compulsive gambling, but argued that Plaintiff's substance abuse was not significant. (Tr. 37). Also, Plaintiff testified, at the May 22, 2012 hearing, that she last used cocaine and alcohol in March 2012, and that, when she had panic attacks, she sometimes turned to alcohol. (Tr. 45-46).

Despite the above records reflecting Plaintiff's acknowledged use of alcohol and cocaine, on May 24, 2010, Plaintiff reported to Joseph Wood, M.D., whom she saw for knee pain, that she had no history of alcohol or drug use. (Tr. 361-62). On March 1, 2011, Plaintiff told Georgia Jones, M.D., who saw Plaintiff for a psychiatric evaluation, that she did not drink alcohol or use illicit drugs. Dr. Jones' diagnosis of Plaintiff was "[p]anic disorder with some agoraphobic symptoms," "[m]ajor affective disorder," and "depression, recurrent, moderate." Dr. Jones did not include substance abuse in her diagnosis. (Tr. 376-79). On August 25, 2011, Darnetta Carter, L.C.S.W. reported, after meeting with Plaintiff for mental health assistance, that Plaintiff denied drug or alcohol abuse. (Tr. 409). On October 12, 2011, when she presented with depression, Plaintiff told Asha Kodwani, M.D., that she had no history of alcohol or drug use. Dr. Kodwani's impression included depressive disorder and anxiety disorder. (Tr. 400-01).

Thus, the record does not reflect that an acceptable medical source considered the extent to which Plaintiff's impairments would remain when the effects of substance abuse were absent. Further, to the extent Mr. Smith rendered an opinion in this regard, he is not an acceptable medical source under the Regulations. Lacroix v. Barnhart, 465 F.3d 881, 886 (8th Cir. 2006) (therapists are not acceptable medical sources) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding therapists and nurse practitioners from the list of acceptable medical sources); Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) ("A therapist is not an 'acceptable medical source' to establish 'a medically determinable impairment.'"). Indeed, a therapist's opinion is entitled to some weight. See id. The record, however, does not reflect whether Plaintiff's treatment team for her mental health conditions included an acceptable medical source who adopted or reviewed Mr. Smith's findings. See id. (distinguishing cases in which a therapist was associated with an acceptable medical source from those where the therapist was not).

It is apparent from the record that, during the relevant period, Plaintiff did not abstain from using alcohol and/or cocaine. Further, as discussed above, the Eighth Circuit, in Brueggemann, 348 F.3d at 692-95, recognized that where a claimant is actively engaging in substance abuse, it is difficult for an ALJ to determine whether a claimant's limitations would remain when the effects of her

substance abuse disorders are absent.  The court finds that the record, as it now stands, was insufficient for the ALJ to make this difficult determination, absent review by an acceptable medical source.  The court will, therefore, reverse and remand this matter to the Commissioner, with instructions that, upon remand, the ALJ should have an acceptable medical source, such as a psychiatrist or psychologist, examine Plaintiff and/or review the record for the purpose of opining whether Plaintiff's limitations would remain when the effects of her substance abuse disorders are absent.

## IV.
## CONCLUSION

The court finds that this matter should be reversed and remanded to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.  Upon remand, the ALJ is directed to fully develop the record in a manner consistent with this court's opinion.  The court stresses that, upon reversing and remanding this matter, it does not mean to imply that the Commissioner should return a finding of "disabled."  The court is merely concerned that the Commissioner's final determination, as it presently stands, is not supported by substantial evidence on the record as a whole.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in her Complaint and Brief in Support of Complaint is **GRANTED** in part, and **DENIED**, in part. (Docs. 1, 16).

**IT IS FURTHER ORDERED** that a Judgment of Reversal and Remand will issue contemporaneously herewith remanding this case to the Commissioner of Social Security for further consideration pursuant to 42 U.S.C. § 405(g), sentence 4.

**IT IS FURTHER ORDERED** that upon entry of the Judgment, the appeal period will begin which determines the thirty (30) day period in which a timely application for attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, may be filed.

Dated this 24th day of February 2016.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE